# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 22-301V

| | |
|---|---|
| JENNIFER CALLIES,<br><br>                  Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                  Respondent. | Chief Special Master Corcoran<br><br>Filed: December 19, 2024 |

*Jubaile Abila, Groth Law Firm, S.C., Brookfield, WI,* for Petitioner.

*Lauren Kells, U.S. Department of Justice, Washington, DC,* for Respondent.

### FACT RULING ON ONSET[1]

On March 18, 2022, Jennifer Callies filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to her on December 1, 2020. Pet. at 1, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find it more likely than not that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination, as alleged.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

### I. Relevant Procedural History

After initiating her claim, Petitioner filed an affidavit, medical records, and a vaccine administration record, followed by a statement of completion. ECF Nos. 6-7. While this matter awaited Respondent's medical review, Petitioner was ordered to submit additional evidence in support of her claim that onset occurred within 48 hours of vaccination. ECF No. 15. Petitioner thereafter filed a supplemental affidavit, plus additional medical records during the summer of 2023. ECF Nos. 17, 31. The parties attempted to informally resolve this matter but were unsuccessful. ECF Nos. 34-38, 40.

Respondent filed his Rule 4(c) Report on June 21, 2024, arguing that Petitioner had failed to show a Table injury because her medical records did not support the conclusion that the onset of her pain occurred within 48 hours of vaccination. Respondent's Report at 5, ECF No. 41. Specifically, Respondent noted that Petitioner returned to the provider that administered the subject vaccine one day later (on December 2, 2020) but did not mention shoulder complaints. *Id.* (citing Ex. 2 at 6-7). More so, Respondent took issue with Petitioner's failure to seek shoulder-related treatment for nearly three months post vaccination, and contended that any complaints of her pain beginning soon after vaccination made during her first treatment visit are inconsistent with her lack of reports just one day post vaccination. *Id.* at 6 (citing Ex. 2 at 5). The onset dispute is now ripe for consideration.

### II. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs*., 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs*., 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014). The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs*., No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs*., 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### III.   Relevant Factual Evidence

I make this finding after a complete review of the record to include all medical records, affidavits, and additional evidence filed, and in particular the following:[3]

- Petitioner received the subject vaccination on December 1, 2020, during a visit with her primary care provider ("PCP") for unrelated conditions. Ex. 2 at 8-9. She attested that she felt pain "immediately" after receiving the vaccine, "which got progressively worse as time progressed." Ex. 1 ¶ 3; Ex.

---

[3] While I have reviewed all the evidence filed to-date in this case, only evidence related to onset will be discussed herein, though other facts may be provided as necessary.

    7 ¶ 4. That night, she "had a dull pain and felt sore at [her] left shoulder," requiring her to use a heating pad and over-the-counter medications. Ex. 1 ¶ 3. She attested that her pain persisted through the next day, and she was then unable to lift her left arm due to pain and decreased range of motion ("ROM"). *Id.* ¶ 4; Ex. 7 ¶¶ 6-8.

- Petitioner's roommate has authored an affidavit on her behalf attesting that Petitioner complained to him of pain and soreness and an inability to lift her left arm on the day of her December 1, 2020 vaccine. Ex. 5 ¶ 5.

- The day after vaccination, on December 2, 2020, Petitioner returned to her PCP to follow up regarding some unrelated conditions. Ex. 2 at 6-9. She did not mention left shoulder complaints during this visit. *See id.* Petitioner has, however, attempted to explain why she failed to disclose left shoulder ailments on this date, stating that she "incorrectly believed that [her] left shoulder pain was a normal side-effect of receiving a flu shot, given [her] history of pain, soreness, and stiffness from flu shots, as well as the warning given . . . at the time of the shot." Ex. 7 ¶¶ 5, 10. She thought her pain "would go away." Ex. 1 ¶ 5.

- There is a subsequent gap of more than two months in the treatment record, and Petitioner has attempted to explained why she did not seek care during this time (despite the existence of pain and limited ROM). Ex. 1 ¶ 5. She noted that she has a four-year-old daughter, plus she experienced difficulties with "medical scheduling during the COVID pandemic." *Id.* Additionally, Petitioner reiterated that she believed the symptoms were normal and would go away. *Id.*; Ex. 7 ¶¶ 11-12.

- 83 days post vaccination, on February 23, 2021, Petitioner returned to her PCP reporting that "[s]ince she had a flu shot in her left deltoid, [she] has been having pain there, mostly with movement." Ex. 2 at 5. She also was unable to fully extend her arm. *Id.* Following a physical examination showing tenderness and limited ROM, she was assessed with left shoulder pain and referred to an orthopedist. *Id.*

- On May 4, 2021, Petitioner saw an orthopedist stating that "[b]ack in January 2021, she got a flu shot in her left shoulder and . . . since then she has had difficulty sleeping on the left shoulder and increasing pain." Ex. 3 at 11. In her affidavit, Petitioner addressed the incorrect date ascribed to her flu vaccine during this visit. Ex. 1 ¶ 7. She explained that she "was

4

    unsure of the exact date of the flu shot, and erroneously stated that it was administered around January 1, 2021, rather than the actual date of December 1, 202[0]." *Id.*

- No other medical record or affidavit evidence regarding the onset of Petitioner's post vaccination shoulder injury has been filed.

## IV.    Finding of Fact Regarding Onset

    A petitioner alleging a SIRVA claim must show that she experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)), and that her pain began within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)). As stated above, Respondent contends that Petitioner's medical records do not support that the onset of her pain occurred within 48 hours of vaccination. Respondent's Report at 5. Petitioner attended an intervening medical visit just one day post vaccination and did not report shoulder pain; she then waited for nearly three months before seeking care. *Id.* at 5-6. She thus is relying on affidavits alone to support her argument as to onset and such affidavits are inconsistent with the contemporaneous medical records. *See id.*

    These objections are ultimately unpersuasive, however, when considered in light of the totality of the evidence. The aforementioned medical records, coupled with Petitioner's affidavits, establish that Petitioner consistently reported to treaters onset close-in-time to vaccination, that she sought treatment within three months of the December 1, 2020 vaccination, and that she indeed was experiencing symptoms in the relevant timeframe. *See,* e.g., Ex. 2 at 5; Ex. 3 at 11; Ex. 1; Ex. 7.

    The fact that Petitioner did not seek treatment for nearly three months post vaccination (on February 23, 2021) does not preclude a finding of Table onset. In other cases, even *greater* delays did not undermine an otherwise-preponderantly-established onset showing consistent with the Table. *See,* e.g., *Tenneson v. Sec'y of Health & Hum. Servs.*, No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied,* 142 Fed. Cl. 329 (2019) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Hum. Servs.*, No. 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because a petitioner underestimated the severity of her shoulder injury). Delay in seeking treatment does bear on the overall severity of the injury but is not *per se* evidence of a non-conforming onset.

    Likewise, the fact that Petitioner sought care with her PCP one day post vaccination (on December 2, 2020) without mentioning left shoulder pain does not detract

from her arguments on onset, as it is common SIRVA petitioners will put off seeking shoulder-related care, believing the pain is normal and will resolve on its own over time, especially since patients are often told by medical providers at the time of vaccination to expect some soreness and pain for a period of time after. This appears to have been the case here, with Petitioner explaining she thought her pain left over from the vaccination was normal and would resolve on its own. *See,* e.g., Ex. 1 ¶ 5; Ex. 7 ¶ 10. I will note, however, Petitioner's ability to seek care for non-shoulder related issues one day after the receipt of her vaccination is somewhat inconsistent with her affidavit, wherein she describes immediate and ongoing shoulder pain by this time. Ex. 1 ¶ 3. This evidence is thus further supportive of the conclusion that Petitioner's SIRVA was very mild.

In addition, although the filed medical record is limited in this case (including only two entries bearing on onset), Petitioner affirmatively and repeatedly linked her shoulder pain to the flu vaccine – beginning with the February 23rd treatment encounter, at which time she noted that her shoulder pain had been present "since she had a flu shot in her left deltoid." Ex. 2 at 5. This reporting provides further support for Table onset. One other subsequent medical record also corroborates the contention made in Petitioner's affidavits that her pain began within 48 hours of vaccination. Ex. 3 at 11 (a May 4, 2021 note that she has had pain since receiving the vaccination in January 2021).

Although one of Petitioner's records does suggest an onset attributable to a vaccination she received in "January 2021" (rather than December 2020), I do not find this is enough to preponderate against a favorable onset finding. In fact, even though Petitioner reported pain dating back to a vaccine she received in January 2021, Petitioner still related her pain as beginning after her receipt of the vaccine in question. Ex. 3 at 11. More so, Petitioner offered a credible explanation for this reported error: that she did not remember the precise date. Ex. 1 ¶ 7. This record therefore provides additional support for Petitioner's claims regarding Table onset.

### Conclusion

Petitioner has provided preponderant evidence that the onset of her shoulder pain occurred within 48 hours of vaccination.

I encourage the parties to make a final attempt at settlement. **Respondent shall file, by no later than <u>Tuesday, January 21, 2025</u>**, a status report concerning how he intends to proceed, including, if appropriate, whether he would like to file an amended Rule 4(c) report or whether he is otherwise willing to entertain a renewed settlement demand from Petitioner.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master